UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                    :
WELLS FARGO TRUST COMPANY, N.A., *solely*   :
*in its capacity as Owner Trustee*,                  :
                                    Plaintiff,       :        18 Civ. 11151 (LGS)
                                                    :
                   -against-                         :        **OPINION & ORDER**
                                                    :
SYNERGY GROUP CORP.,                                :
                                    Defendant.       :
                                                    :
------------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        This is a breach of guaranties dispute.  Plaintiff Wells Fargo Trust Company, N.A.

("Wells Fargo"), as Owner Trustee, leased two aircraft engines to non-party Oceanair Linhas

Areas S.A. d/b/a Avianca Brazil ("Avianca Brazil").  Defendant Synergy Group Corp.

("Synergy") guaranteed the two leases (the "Leases").  After Avianca Brazil defaulted on the

leases, Wells Fargo brought this action against Synergy to enforce the guaranties.  The parties

cross-moved for summary judgment.  Wells Fargo seeks judgment that Synergy breached the

leases and damages, totaling $13,516,403.12 and €49,130.35, plus attorneys' fees and

prejudgment interest.  Synergy moves for a judgment of no liability on the ground that the

guaranties are unenforceable and for attorneys' fees as the prevailing party.  On July 17, 2019,

the parties stipulated to the prima facie elements of Wells Fargo's case, namely that the

guaranties are absolute and unconditional, the debts are outstanding and Synergy has breached

the guaranties.  The only remaining issue is the validity of the damages provisions under the

applicable agreements and the amount of damages, if any, to which Wells Fargo is entitled.  For

the reasons below, judgment is entered in favor of Wells Fargo for the requested damages of

$13,516,403.12 and €49,130.35, plus attorneys' fees and prejudgment interest.

## I.      BACKGROUND

Unless otherwise stated, the following facts are undisputed and drawn from the parties'
submissions and Rule 56.1 statements.  At issue are two guaranty agreements, and the underlying
lease agreements, for two aircraft engines identified by serial numbers 643846 and 573750 (the
"643846 Engine" and the "573750 Engine," respectively).  All agreements are governed by New
York law.

On August 25, 2016, Plaintiff and Avianca Brazil entered into the Aircraft Engine Lease
Agreement (the "643846 Lease") and General Terms Operational Engine Lease Agreement (the
"643846 GTA") (collectively, the "643846 Agreements"), with respect to the 643846 Engine.
The agreements leased the engine to Avianca Brazil for a period of ten years for a monthly rent
of $70,000.  On that same date, Plaintiff and Defendant entered into the Guaranty (the "643846
Guaranty"), by which Defendant agreed to perform "all of the Obligations" of Avianca Brazil
under the 643846 Agreements.

Two months later, on October 18, 2016, Plaintiff and Avianca Brazil entered into the
Aircraft Engine Lease Agreement (the "573750 Lease") and General Terms Operational Engine
Lease Agreement (the "573750 GTA") (collectively, the "573750 Agreements"), with respect to
the 573750 Engine.  These agreements leased the 573750 Engine to Avianca Brazil for a period
of eight years for monthly rent of $72,500.  Defendant also guaranteed these Agreements and
agreed to perform "all of the Obligations" that Avianca Brazil assumed under them.

Around September 2018, Avianca Brazil defaulted on both the 643846 Agreements and
the 573750 Agreements.  In June 2019, Plaintiff's servicer, Willis Lease Finance Corp.

("Willis"), repossessed the 573750 Engine, and around August 2019, repossessed the 643846

Engine.  Willis subsequently arranged for the inspection and repair of both engines.[1]

Section 19(d) ("Calculation of Damages") in both GTAs provides that, upon default,

Avianca Brazil -- and therefore, Defendant under the Guaranties -- must pay Plaintiff:

> (1) all past due rent and Use Fees, *i.e.* "all Rent, Supplemental Rent [or "Use Fees," a term equivalent to "Supplemental Rent," under the 573750 GTA] and other amounts . . . due and payable under the Lease" (§19(d)(1));[2]

> (2) all future rent for the remaining term of the Leases, discounted to present value, *i.e.* "all Rent . . . which would have accrued . . . through expiration of each respective Lease Term, discounted at the rate of five percent (5%) per annum" (§19(d)(2));

> (3) "such additional amount as shall be sufficient to place [Plaintiff] in the same economic position, on an after-tax basis, as [Plaintiff] would have been in" in the absence of a breach by Avianca Brazil (§19(d)(3)); and

> (4) "without duplicating any element of [the foregoing] damages," "all reasonable expenses, disbursements, costs and fees incurred in:" (i) "repossessing, storing, preserving, shipping, maintaining, repairing and refurbishing" the engine to the condition in which Avianca Brazil promised to return the engine under "Section 18," and (ii) preparing "for sale or lease, advertising the sale or lease of . . . and selling or releasing" the aircraft (§19(d)).

Section 18, incorporated into Section 19(d) (item (4) above), requires Avianca Brazil to

"compensate" Plaintiff for "any difference between the condition" of the engine at the time of

delivery and at the time of return (§18(b)), *i.e.* what Plaintiff terms "End of Lease Payments."

Section 18 also requires Avianca Brazil to inspect the engine and "repair" any specified

---

[1] The facts about Willis are based on the declaration of Willis' Chief Technical Officer, Gary Failler.  Defendant disputes these facts in its Reply 56.1 Statement on the ground that this evidence should be excluded because Plaintiff omitted Mr. Failler in the Rule 26 disclosures.  As discussed *infra*, the Failler declaration is not excluded.

[2] The "Use Fees" or "Supplemental Rent" are monthly fees under the GTAs "based on the actual hours and cycles of operations" of the engines (§4(b)).  For ease, these fees will be referred to only as "Use Fees."

"defect[s]" at its "sole expense" (§18(c)), *i.e.* what Plaintiff terms "Repair and Maintenance Costs."

In the event that Avianca Brazil does *not* return the engines to Plaintiff, it must pay an "Agreed Value" for the engines under Section 19(d).  If Avianca Brazil returns the engines, Plaintiff "in its sole discretion may determine" whether to "[h]old, keep, idle, sell or lease" the engines, but "any damages" per above "shall be reduced . . . if [Plaintiff] elects to sell or lease" the engines to another party (§19(b)(iii)(C)).  Specifically, "the total proceeds of any such lease or sale . . . shall be applied as credit in the mitigation of damages," in accordance with Section 19(c), entitled "Mitigation Credit Upon Lease or Sale."

Finally, the Guaranties in Section 8 provide that the "prevailing party" in an action regarding the Guaranties "shall be entitled to recover all reasonable expenses . . . including attorneys' fees and expenses . . . from the non-prevailing party."  The Guaranties in Section 9 further provide for prejudgment interest: "If the Guarantor fails to pay any amount payable under this Guaranty when such amount is due, interest on such amount shall accrue at the rate of 10% per annum computed from the date such amount is due until the date such amount is paid."

Pursuant to the above provisions, Plaintiff seeks to collect past due rent and Use Fees, future rent for the remaining Lease terms, End of Lease Payments, Repair and Maintenance Costs and costs for repossessing the engines from Avianca Brazil.  The amounts Plaintiff seeks are disputed, except as indicated below:

| Damages | Plaintiff's Amount | Defendant's Amount |
|---|---|---|
| Past Due and Unpaid Rent for the 643846 Engine | **$630,000.00** | **Not in dispute** |
| Past Due and Unpaid Use Fees for the 643846 Engine | $582,748.40 | $551,765.00[3] |
| Past Due and Unpaid Rent for the 573750 Engine | $507,500.00 | $1,011,977.00<br>Total of past due rent and Use Fees; Plaintiff's total is $1,030,686.67. |
| Past Due and Unpaid Use Fees for the 573750 Engine | $523,186.67 | |
| Future Rent for the 643846 Engine | $4,908,750.00 | None, due to invalid contract provision |
| Future Rent for the 573750 Engine | **$4,293,812.50** | **Not in dispute[4]** |
| End of Lease Payment for the 643846 Engine | $1,005,726.10 | None, due to invalid contract provision |
| End of Lease Payment for the 573750 Engine | $215,992.83 | None, due to invalid contract provision |
| Repair and Maintenance Costs for the 573750 Engine | $122,159.51 | None, because supporting evidence is inadmissible |
| Repair and Maintenance Costs for the 643846 Engine | $697,308.93 and €49,130.35 | None, because supporting evidence is inadmissible |
| Plaintiff's Collection Efforts in Brazil | $29,218.18 | None, because supporting evidence is inadmissible |
| **Total Damages USD** | **$13,516,403.12** | **$6,487,554.50** |
| **Total Damages EUR** | **€49,130.35** | **N/A** |

On July 17, 2019, the parties stipulated to the elements of Plaintiff's breach of guaranty claims, without prejudice to Defendant's defenses regarding enforceability of some damages provisions and the calculation of damages. Specifically, "the Parties agree and stipulate . . . [t]he

---

[3] In the Declaration of Michael Welch, Executive Director of Defendant Synergy, Mr. Welch calculates that the total unpaid rent and Use Fees for the 643846 Engine is $1,181,765. Per its Reply 56.1, Defendant does not dispute the $630,000 owed for just past due rent for the 643846 Engine. Accordingly, the amount Defendant contends is owed for just the Use Fees of the 643846 Engine is **$551,765 --** or the difference between the $1,181,765 total for past rent *and* Use Fees and the undisputed $630,000 for just past rent.

[4] In Defendant's Reply 56.1 Statement, *see* Dkt. No. 66, ¶ 33, Defendant states that the amount due for future rent of the 573570 Engine is "not in dispute." This is in spite of Defendant's later claim that "[n]othing is due" for future rent of the 634846 Engine because the "formula recited gives rise to an enforceable penalty." *See id.* ¶ 35.

guaranties at issue in the Complaint are absolute and unconditional, underlying debts are outstanding, and Defendant as guarantor has not performed under the guaranties."

## II.    LEGAL STANDARDS

When parties cross-move for summary judgment, a court construes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted and alteration in original).

## III.   DISCUSSION

Plaintiff has established all elements of its breach of guaranty claims as a matter of law. Plaintiff has furthermore proven the amount of damages requested, and its entitlement to attorneys' fees and prejudgment interest.

### A.  Breach of Guaranties

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *accord Mergers &*

*Acquisition Servs., Inc. v. Eli Glob., LLC*, No. 15 Civ. 3723, 2017 WL 1157132, at *6 (S.D.N.Y. Mar. 27, 2017). New York law expressly governs the agreements and, accordingly, this breach of guaranties dispute. *See TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 19 Civ. 3283, 2020 WL 1322872, at *7 (S.D.N.Y. Mar. 20, 2020) (explaining that a New York federal court must apply New York choice-of-law rules, which "'generally enforce[]'" "'[c]ontractual choice of law provisions'") (quoting *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017)).

The parties have stipulated to the first three elements. As discussed below, Defendant's defense that the Agreements' damages provisions are unenforceable is unpersuasive. Plaintiff is furthermore entitled to the requested damages amount.[5] Accordingly, Plaintiff has proven, as a matter of law, all elements of the breach of guaranty claims.

### B.  The Damages Provisions Are Enforceable

Defendant argues that Plaintiff should not receive future rent for the 643846 Engine or End of Lease Payments because the contract provisions on which these damages are based are punitive, against public policy and therefore unenforceable. The proper remedy, Defendant argues, is "striking [Plaintiff's] claim on two guarantees [sic]" entirely, although Defendant also contradictorily argues that it is "not liable for" the amounts under the challenged "liquidated

---

[5] In any case, Defendant has conceded the damages element of Plaintiff's claims. It recognizes that Plaintiff has "actual damages" -- just not to the full extent of the Agreement's damages clauses -- the "nonreceipt of rent and supplemental rent" and apparently the future rent of the 573570 Engine. *See supra* Note 4; Def. Br., Dkt. No. 52, at 21-22. Specifically, as Defendant's Reply 56.1 Statement shows, *see* Dkt. No. 66, ¶¶ 21-23 & 33, the amounts owed for the past due rent for the 643846 Engine or the future rent for the 573570 Engine are undisputed. Although Defendant disputes by relatively small margins the *amounts* of past due Use Fees for the 643846 Engine and past due rent and Use Fees for the 573570 Engine, it does not dispute the availability of these types of damages.

damages provisions" only.  *See* Def. Br., Dkt. No. 52, at 8 & 9.[6]  In any case, the provisions are enforceable as a matter of law.

Article 2A, Section 504 of the New York Uniform Commercial Code ("N.Y. U.C.C. § 2-A-504") provides that "[d]amages payable by either party for default . . . may be liquidated in the lease agreement but only at an amount or by a formula that is reasonable in light of the then anticipated harm caused by the default."  N.Y. U.C.C. § 2-A-504(1).  A liquidated damages provision amounting to an improper penalty is not "reasonable."  *See JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 609 (N.Y. 2005).  It "is a question of law" whether a provision is "an enforceable liquidation of damages or an unenforceable penalty."  *Id.*; *accord CVS Pharmacy, Inc. v. Press Am., Inc.*, 377 F. Supp. 3d 359, 375 (S.D.N.Y. 2019); *Rubin v. Napoli Bern Ripka Shkolnik, LLP*, 179 A.D.3d 495 (1st Dep't 2020).  The provision must be a proper "estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement . . . .  If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced."  *JMD Holding Corp.*, 828 N.E.2d at 609 (internal citation marks omitted).  The party seeking to strike the damages provision bears the "burden" of showing the provision is "in fact, a penalty."  *Id.*

Defendant has failed to carry its burden that either the future payments or the End of Lease Payments provisions, under Section 19(d) of the GTAs, are anything but proper "estimate[s] . . . of the extent of injury" due to "breach of the agreement[s]."  *Id.*  The future payments ensure that Plaintiff receives the benefit of its bargain, *i.e.* rent and Use Fees through the duration of the Leases.  They put Plaintiff in the position it would have been in had there

---

[6] Unless otherwise noted, pincites to docket filings are to the page numbers of the Electronic Case Files ("ECF") stamp, not the page numbers in the original document.

been no breach.  Contrary to Defendant's argument, the provision does not put Plaintiff in a superior position simply because it entitles Plaintiff to receive *both* the future payments and the option to lease or dispose of any returned engines.  As Section 19(c) in the GTAs, called "Mitigation Credit Upon Lease or Sale," expressly provides, any damages Defendant owes must be reduced by "the total proceeds of any such lease or sale" of the engines.  Nor is the fact that Plaintiff has "sole discretion" whether to lease or sell the returned engines an issue.  Even if Plaintiff chooses not to lease or sell, the future payments that Defendant owes are simply the original obligation that Defendant assumed.  If Plaintiff *does* lease or sell, then Defendant's obligation is reduced.  Defendant's reliance on the nonbinding Georgia case, *Carter v. Tokai Fin. Servs., Inc.*, 500 S.E.2d 638, 641 (Ga. Ct. App. 1998), is unpersuasive.  In *Carter*, as Defendant concedes, the "damages clause [at issue] entitled the Lessor to recover the present value of all future rent . . . *and* sell the repossessed Equipment *without any duty to account to the lessee for any proceeds with respect to the sale*," *see* Def. Br., Dkt. No. 52, at 19 (emphasis added), hence the clause was punitive.  The Agreements here expressly provide the opposite.

Similarly, Defendant is incorrect that the future payments are punitive because Section 19(d) obligates Defendant to pay an "Agreed Value" to Plaintiff for the engines, in the event Avianca Brazil does not return the engines.  The provision does not apply to the current damages calculation, since the engines were in fact surrendered.  This provision merely ensures that Plaintiff receives the benefit of its bargain.  The provision is compensatory rather than punitive because the Leases require that Avianca Brazil return the engines under normal circumstances since it is renting them.  If Avianca Brazil does not, then Avianca Brazil or Defendant as guarantor must pay an "Agreed Value" for the engines.  That the damages provision requires Defendant to pay the "Agreed Value" *only if* Avianca Brazil fails to return the engines after a default is entirely consistent with the original contract obligation.  The provision applies in a

scenario where Defendant's damages would not be reduced by proceeds from a sale or lease of the engines under the damages mitigation provision, because there would not be any engines for Plaintiff to sell or lease.  As Plaintiff correctly points out, Defendant's citation to *In re Republic Airways Holdings Inc.*, 598 B.R. 118, 134 (Bankr. S.D.N.Y. 2019), is unhelpful, because the formula at issue in that case required *both* the return of the equipment and a payment of a lump sum.  The Agreements here do not.

Likewise, Defendant's challenge to the End of Lease Payments provision is unpersuasive. Defendant argues that the requirement that it pay as damages "all reasonable expenses . . . for repairing and refurbishing the [engines] to the condition required by Section 18" (§19(d)) improperly "transfer[s] . . . the risk of idiosyncratic depreciation or damage to a particular engine to Avianca Brazil."  *See* Def. Br., Dkt. No. 52, at 19.  But the parties expressly *agreed* to this risk allocation in the Agreements.  Indeed, the damages provision itself, in Section 19(d) of the GTAs, explicitly references the agreement "required by Section 18," which provides that Avianca Brazil must "compensate" Plaintiff for "any difference between the condition" of the engine at the time of delivery and at the time of return per the described methodology (§18(b)). The Agreement therefore recognizes that Avianca Brazil and Defendant bear the risk of depreciation, not Plaintiff.  A court should enforce the "parties' abilities to allocate risk by mutual agreement" as doing so enables the parties to "form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed."  *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 734 F. Supp. 2d 368, 379 (S.D.N.Y. 2010); *see Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17 Civ. 1898, 2018 WL 1587074, at *7 (S.D.N.Y. Mar. 28, 2018) ("Parties to a contract are generally free to allocate risks . . . as they choose [and courts should] . . . not re-write how the parties defined their rights and obligations [and] allocated their risks . . . .").  This principle holds true particularly

where, as here, the parties are sophisticated commercial entities, capable of determining how to allocate their risks and adjust their pricing accordingly.  *See, e.g.*, *In re Lyondell Chem. Co.*, 585 B.R. 41, 52 (S.D.N.Y. 2018) (recognizing that "New York courts have routinely enforced . . . provisions when contracted by sophisticated parties . . . [as the provisions are] a means of allocating economic risk[s]" between them).  Defendant's argument reduces to a challenge of the substantive obligations it has already assumed, rather than a bona fide challenge to the damages calculations.

In general, underlying Defendant's various arguments is a misunderstanding of N.Y. U.C.C. § 2-A-504 and the principle against punitive damages.[7]  Although Defendant cites the well-established legal principle that the fundamental purpose of contract damages is to "put the non-breaching party in the position it would have been had the contract been performed," *see* Def. Br., Dkt. No. 52, at 22, Defendant's theory of damages effectively resets the parties to the state of the world *before* contracting and leaves Plaintiff *worse* off than if the Agreements had been performed.  In Defendant's view, it should owe nothing more than past due rent and Use Fees for the period when Avianca Brazil actually used the engines.  Once Avianca Brazil returned the engines, it should owe nothing further because Plaintiff once again possessed the engines and Avianca Brazil ceased using them.  But this view ignores the vast majority of the promises Avianca Brazil and Defendant made to Plaintiff.  Plaintiff expressly bargained for a steady stream of payments for the duration of the Leases and the eventual return of the engines or payment of the "Agreed Value."  The damages provisions at issue are the direct analogues to

---

[7] Defendant seems to argue that liquidated damages are not available where the damages can be easily quantified at the time of breach.  Without discussing the ease of quantification here, Defendant itself recognizes in its briefing that this requirement was not preserved in the plain language of N.Y. U.C.C. § 2-A-504.  The case law on which Defendant relies predates the enactment of this provision.

these promises.  *See JMD Holding Corp.*, 828 N.E.2d at 609 (A liquidated damages provision should be a proper "estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained *as a result of breach of the agreement*.") (emphasis added) (quotation marks omitted).  A corollary principle is that Defendant cannot attempt to undo the promises it has already made in the guise of challenging purportedly punitive damages provisions.

### C.  Plaintiff Has Proven the Amounts of Damages Requested

Applying the damages provisions to the evidence in the record, Plaintiff has proved that it is entitled to the requested damages, attorneys' fees and prejudgment interest as a matter of law. "[W]here the court has sustained a liquidated damages clause the measure of damages for a breach will be the sum in the clause, no more, no less." *JMD Holding Corp.*, 828 N.E.2d at 609 (quotation marks omitted).  Defendant challenges only the amount of damages for past due rent and Use Fees, except as to rent for the 643846 Engine, which it does not challenge.  Defendant furthermore does not challenge the *amounts* of future payments, End of Lease Payments, Repair and Maintenance Costs or repossession costs that Plaintiff requests, but only the enforceability of the provisions or the admissibility of evidence on which these amounts are based.  These challenges are rejected.

Plaintiff in sum is entitled to the following damages, plus attorneys' fees and prejudgment interest as explained below:

| Damages Category | Amount |
|---|---|
| Past Due and Unpaid Rent for the 643846 Engine | $630,000.00 |
| Past Due and Unpaid Use Fees for the 643846 Engine | $582,748.40 |
| Past Due and Unpaid Rent for the 573750 Engine | $507,500.00 |
| Past Due and Unpaid Use Fees for the 573750 Engine | $523,186.67 |
| Future Rent for the 643846 Engine | $4,908,750.00 |
| Future Rent for the 573750 Engine | $4,293,812.50 |
| End of Lease Payment for the 643846 Engine | $1,005,726.10 |
| End of Lease Payment for the 573750 Engine | $215,992.83 |
| Repair and Maintenance Costs for the 573750 Engine | $122,159.51 |
| Repair and Maintenance Costs for the 643846 Engine | $697,308.93 and €49,130.35 |
| Plaintiff's Collection Efforts in Brazil | $29,218.18 |
| **Total Damages USD** | **$13,516,403.12** |
| **Total Damages EUR** | **€49,130.35** |

### 1. Past Due Rent and Use Fees

Plaintiff moves for past due rent and Use Fees of **$1,212,748.40** total for the 643846 Engine and **$1,030,686.67** total for the 573750 Engine. As to the 643846 Engine, these amounts reflect what is past due according to invoices issued between September 2018 through June 2019, per the undisputed monthly rent of $70,000.[8] As to the 573750 Engine, these amounts reflect what is past due according to invoices issued between September 2018 through May 2019, per the undisputed monthly rent of $72,500. Plaintiff substantiates the totals through

---

[8] For clarity, the invoice dates referenced here are the dates of issuance, as reflected in the invoices attached to the Declaration of Scott Flaherty. The declaration also provides a summary table of the invoices, their dates of issuance and payment due dates.

evidence including: (1) the Leases themselves which set out the monthly rent and calculation of Use Fees, (2) copies of the invoices, (3) the Declaration of Scott Flaherty, the Chief Financial Officer of Willis, Plaintiff's servicer, who attests to the authenticity of the invoices and the fact that the invoices remain outstanding as of August 7, 2019, and (4) the Declaration of Gary Failler, the Chief Technical Officer of Willis, who attests as of August 7, 2019, that the 573750 Engine was returned around June 19, 2019, and the 643846 Engine was due to be returned around August 9, 2019 -- which accordingly justifies the issuance of invoices for the 573750 Engine through May 2019, and for the 643846 Engine through June 2019.

Defendant argues that the totals should actually be **$1,181,765** for the 643846 Engine and **$1,011,977** for the 573750 Engine, rather than Plaintiff's requested amounts.  But Defendants do not support these figures with sufficient evidence to raise a genuine issue of fact.  *See* FED. R. CIV. P. 56(c)(1)(A) (Where the movant has properly supported its motion with evidentiary materials, the opposing party must cite "to particular parts of materials in the record" to establish a genuine issue of fact.); *see Hicks*, 593 F.3d at 166 ("[M]ere speculation or conjecture as to the true nature of the facts" does not overcome summary judgment.).

Defendant attempts to challenge Plaintiff's totals through two declarations by its Executive Director, Michael Welch.  But the declarations are insufficient.  First, Defendant has effectively abandoned the first declaration.  Although Mr. Welch initially claimed in a July 17, 2019, declaration that Defendant owed only **$395,819** for the 643846 Engine and **$375,623** for the 573750 Engine for outstanding payments, his subsequent August 14, 2019, declaration revised the figures significantly, without explanation, to Defendant's current amounts of **$1,181,765** for the 643846 Engine and **$1,011,977** for the 573750 Engine.  The methodology and total amounts in the July 17, 2019, declaration are superseded.

14

Second, Defendant does not actually dispute the authenticity of Plaintiff's submitted invoices or any particular aspect of Plaintiff's calculations.  At most, Mr. Welch submits excerpts from a "spreadsheet [he has] prepared," which lay out Defendant's marginally different, but unexplained, calculations, for the total past due rent and Use Fees (in the spreadsheet line "Outstanding Payments").  *See* Welch Decl., Dkt. No. 65, ¶ 6.  Mr. Welch states in the August 14, 2019, declaration that the discrepancy between the parties' calculations may be due to "the parties differ[ing] in terms of amounts to versus credits do [sic]," *i.e.* Plaintiff's invoices somehow fail to account for "credits" owed to Defendant.  But Defendant does not explain what the "credits" are, on what contract provision the "credits" are based, whether the discrepancy in Plaintiff's and Defendant's numbers are in fact due to "credits" or something else, or how Defendant actually reached its slightly lower totals for past due rent and Use Fees in the spreadsheet.[9]  The "Synergy Calculation" for "Outstanding Payments" therefore effectively amounts to an unexplained conclusory claim -- "conjecture" rather than sufficient evidence -- that fails to create a genuine dispute of fact.  *See Hicks*, 593 F.3d at 166.

Finally, Mr. Welch appears to challenge the June 2019 and August 2019 surrender dates of the 573750 Engine and 643846 Engine respectively, which are substantiated by the Declaration of Gary Failler, the Chief Technical Officer of Willis, perhaps to suggest that Plaintiff's invoice billing should have concluded earlier.  Defendant argues that the evidence from Mr. Failler should be excluded because Plaintiff omitted Mr. Failler in the Rule 26 disclosures.  This argument is rejected.  A party may supply evidence from a witness not included in the Rule 26 disclosures if the omission is "substantially justified or is harmless."

---

[9] To the extent that Defendant is seeking to credit certain "Advanced Fees," Plaintiff accurately points to a Lease provision that the Advance Fee need not be applied "to cure any Event of Default under this Lease."

15

FED. R. CIV. P. 37(c)(1).  Plaintiff amply meets this requirement.  Only around late June 2019, a few weeks before the first summary judgment motion papers were due, did the facts to which Mr. Failler testifies even *begin* to materialize.  Specifically, Mr. Failler attests to the return or planned return of the engines and their condition upon return.  One of the two engines was returned only in late June 2019, and the second was returned *after* Mr. Failler's August 7, 2019, declaration.  The inspection of the engines to determine their conditions subsequently took significant time.  Accordingly, it was "substantially justified" that Plaintiff did not identify Mr. Failler in the Rule 26 disclosures.  In any case, the omission is harmless, as discovery had closed by the time Mr. Failler's testimony arose.  Furthermore, as Defendant is in touch with Avianca Brazil and has submitted evidence procured from Avianca Brazil and its executive, Defendant is able to access Avianca Brazil's evidence as to the return process.  Should Defendant believe Mr. Failler's testimony is inaccurate, it is therefore equipped to offer any contrary evidence.

Defendant *did* submit correspondence between Avianca Brazil and Willis regarding the return process.  But the letters Mr. Welch submitted as Exhibits A and B to the August 14, 2019, declaration do not actually contradict Plaintiff's surrender dates, and instead justify the billing periods of the invoices.  Both letters are from Willis to Avianca Brazil and outline the procedures by which Avianca Brazil must return the engines.  The letters expressly confirm that the engines had not yet been surrendered as of the dates of the letters.  In the May 22, 2019, letter on the 573750 Engine, Willis writes that the parties "agree that the date and time of the [forthcoming] ferry flight *will be considered the date* on which [Avianca Brazil] has returned the Engine to Lessor pursuant to the Lessee" (emphasis added).  Given that Avianca Brazil still possessed the 573750 Engine on May 22, 2019, the final invoices for unpaid rent -- issued on April 3, 2019 -- and for Use Fees -- issued on May 23, 2019, *for payment due May 10, 2019* -- are plainly appropriate.  *See* Flaherty Decl., Dkt. No. 58, ¶ 6.  Similarly, the July 3, 2019, letter from Willis

to Avianca Brazil regarding the 643846 Engine expressly confirms that the engine was still installed in Avianca Brazil's aircraft at that time and would be returned at a later date. The last invoices for unpaid rent and Use Fees for the 643846 Engine were issued in June 2019, even before the engine was physically repossessed.

Based on the undisputed facts, no reasonable jury could credit Defendant's unsupported claim of damages, as opposed to Plaintiff's calculation of damages, reinforced by the invoices and a straightforward calculation. Therefore, Plaintiff is entitled to **$1,212,748.40** for the 643846 Engine and **$1,030,686.67** for the 573750 Engine for past due rent and Use Fees.

### 2. Future Rent and Use Fees and End of Lease Payments

Plaintiff has proved damages for (1) future rent and Use Fees and (2) End of Lease Payments as a matter of law. Defendant's primary challenge to these damages is that the contract provisions on which they are based are invalid, but as discussed above in Section III.B, *supra*, these provisions are enforceable.

In support of the future rent and Use Fees calculation, Plaintiff has submitted copies of the GTAs and Mr. Flaherty's testimony that (i) the remaining terms of the Leases are 85 months for the 643846 Engine and 69 months for the 574750 Engine and (ii) and the calculation of the future payments is based on a straightforward multiplication of the remaining months of the Leases by the monthly rent and Use Fees rate. In Defendant's Reply 56.1 Statement, Defendant does not dispute these facts. With respect to the final calculation for the 573750 Engine, Defendant responds expressly that "[t]he facts are not in dispute." With respect to the final calculation for the 643846 Engine, Defendant responds that the calculation is "[d]isputed," but only insofar as "[n]othing is due. The formula recited gives rise to an unenforceable penalty." To the extent that Defendant challenges the calculation for the 643846 Engine because the

calculation relies on a fact from the Failler Declaration, Defendant's attempt to preclude this declaration is unavailing.

In support of the End of Lease Payments, Plaintiff has submitted copies of the invoices, spreadsheets and the testimony of Mr. Flaherty, who explains the calculation of and line items for the End of Lease Payments.  Defendant primarily objects to the provisions on which these damages are based, which are enforceable as discussed above.  Defendant further argues that the calculation may be improper because the Use Fees and End of Lease Payments may overlap, and therefore the End of Lease Payments should be lowered.  To support this argument, Defendant points to how the Leases generally describe that a purpose of the Use Fees is to "bring mechanically current the leased Engine," which is similar to the purpose of the End of Lease Payments of restoring engines to an agreed upon condition at the time of return.  *See* Def. Reply Br., Dkt. No. 63, at 10.  Plaintiff also offers the declaration of Jorge Vianna, an Avianca Brazil officer, who testifies that the "industry practice" is that Use Fees may cover a portion of the End of Lease Payments.  *See* Vianna Decl., Dkt. No. 67, ¶ 2.  The problem with both pieces of evidence is that neither actually supports that the End of Lease Payments are in fact duplicative here, for example, by pointing to specific line items in the spreadsheets or invoices.  To raise a genuine issue of fact, Defendant must cite to "*particular parts of materials* in the record."  FED. R. CIV. P. 56(c)(1)(A).  A general description in the Leases of how Use Fees may seem similar to End of Lease Payments is insufficient and does not raise anything more than "conjecture as to the true nature of the facts."  *Hicks*, 593 F.3d at 166.  Similarly, Mr. Vianna's bird's-eye view testimony on how the industry sometimes operates fails to raise a genuine dispute that the calculations at issue are duplicative.  Indeed, as an Avianca Brazil executive, Mr. Vianna presumably has access to internal alternative calculations for End of Lease Payments based on prior payments his company has made, but he does not proffer any evidence.  Plaintiff, in any

case, explains that the invoices *do* in fact build in the practice of crediting Avianca Brazil for relevant payments against End of Lease Payment charges.  For example, the invoice for the 643846 Engine plainly shows that a $582,748.40 "credit" has been applied to and therefore reduces the total End of Lease Payment.

No reasonable jury could conclude from the foregoing facts that Plaintiff's calculation is inaccurate.  Therefore, Plaintiff has proved as a matter of law that it is entitled to **$4,908,750.00** for the 643846 Engine and **$4,293,812.50** for the 573750 Engine for future rent and Use Fees and to **$1,005,726.10** for the 643846 Engine and **$215,992.83** for the 573750 Engine for End of Lease Payments.

### 3.  Repair and Maintenance Costs and Repossession Costs

Plaintiff has proved the Repair and Maintenance Costs and repossession costs.  To support these calculations, Plaintiff submitted (1) copies of the GTAs under which Plaintiff is entitled to such damages, (2) all the invoices that account for these costs, and (3) the Declaration of Dean M. Poulakidas, Senior Vice President and General Counsel of Willis, who attested to the authenticity of the invoices, the internal and external entities performing relevant work and the purpose of the discrete costs on the invoices.  Mr. Poulakidas also explained that his testimony is based on his own personal knowledge and review of Willis' books and records.

Defendant does not dispute any of the calculations, the final resulting totals, or that the invoices reflect Repair and Maintenance Costs and repossession costs that Plaintiff may recover.  Defendant's only objection is that Mr. Poulakidas' testimony should be excluded because he lacks "personal knowledge" of the facts to which he testifies, as required under Federal Rule of Civil Procedure 56(c)(4).  This objection is rejected.  As a Willis executive, Mr. Poulakidas is privy to the various workstreams at Willis and how Willis maintains books and records.  He is also able to interpret those books and records and reach the conclusions in his declaration based

on his personal knowledge.  His testimony accordingly arises from personal knowledge and may be considered on summary judgment.

Mr. Poulakidas' declaration clearly explains the purpose of each discrete invoice charge, thereby showing how they are proper expenses under the GTAs.  Section 19(d) provides that Plaintiff is entitled to "all reasonable expenses, disbursements, costs and fees incurred in . . . repossessing, storing, preserving, shipping, maintain, repairing and refurbishing" the engine to the agreed upon condition set out in "Section 18" of the GTAs.  Section 18, in turn, requires Avianca Brazil to inspect the engine and "repair" any specified "defect[s]" at its "sole expense" (§18(c)).  It is undisputed that Avianca Brazil and Defendant did not perform the required inspection or subsequent repairs, but that Plaintiff, Willis and outside vendors had to do so instead.  Furthermore, Section 19 provides that Plaintiff may recover "attorney's fees" incurred in carrying out these efforts, including for repossession.  It is undisputed that Plaintiff expended local attorneys' fees to collect the engines from Brazil after Avianca Brazil filed for bankruptcy in Brazilian court.

Based on the undisputed evidence, Plaintiff has proved that it is entitled to **$122,159.51** for the 573570 Engine and **$697,308.93 and €49,130.35** for the 643846 Engine for Repair and Maintenance Costs.[10]  Plaintiff also has proved that it is entitled to **$29,218.18** for costs incurred collecting the engines in Brazil.

---

[10] Because some of the costs were invoiced in Euros, the damages award is properly in Euros. This Court, sitting in diversity, must apply New York's rule regarding foreign currency obligations.  *See Rienzi & Sons, Inc. v. Puglisi*, 638 F. App'x 87, 92-93 (2d Cir. 2016) (summary order).  N.Y. Judiciary Law § 27(b) provides that the judgment shall be rendered in "the foreign currency of the underlying obligation" and "[s]uch judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree."  N.Y. Judiciary Law § 27(b).

### 4. Attorneys' Fees and Prejudgment Interest

Under the plain terms of the Guaranties, Plaintiff is entitled to both attorneys' fees and prejudgment interest.  Plaintiff is the unequivocal prevailing party.  Section 8 of the Guaranties provides that the prevailing party "shall be entitled to recover all reasonable expenses . . . including attorneys' fees and expenses . . . from the non-prevailing party" in an action over the Guaranties.  Defendant itself recognizes the validity of this provision, as it has requested attorneys' fees for itself, in the event it prevailed.  Section 9 further provides that "[i]f the Guarantor fails to pay any amount payable under this Guaranty when such amount is due, interest on such amount shall accrue at the rate of 10% per annum computed from the date such amount is due until the date such amount is paid."  The parties shall confer in an effort to agree on the amount of attorneys' fees and pre-judgment interest.  If they cannot do so, Plaintiff shall file a motion no later than **June 29, 2020**.  The Court will defer ruling on the motion to withdraw by defense counsel filed on May 22, 2020.

## IV.    CONCLUSION

For the reasons above, Plaintiff's Motion for Summary Judgment is GRANTED, and damages are awarded to Plaintiff in the amounts of $13,516,403.12 and €49,130.35, plus attorneys' fees and prejudgment interest.  Defendant's Motion for Summary Judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 80.

Dated: June 9, 2020
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE